UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GARRETT MICHAEL McCOY,<br><br>                    Plaintiff,<br><br>       v.<br><br>ADA COUNTY SHERIFF MATTHEW CLIFFORD; SHAREHOLDERS; and SUBORDINATE OFFICERS,<br><br>                    Defendants. | Case No. 1:24-cv-00431-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Garrett Michael McCoy's Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Having reviewed the record, the Court concludes that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

## 1.     Standards of Law for Screening Complaints

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim

for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

A court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim. Therefore, in its review under §§ 1915 and 1915A, the Court has reviewed only the Complaint found at Docket No. 3, not the affidavit attached to the Complaint. *See* General Order 342, *In Re: Procedural Rules for*

*Prisoner Civil Case Filings and for Prisoner E-Filing Program*, § A(1)(b) and (c) ("No exhibits may be attached to a complaint or any type of amended complaint, except those showing exhaustion of administrative remedies[,] [and] [n]o affidavits may be attached to a complaint or any type of amended complaint.").

## 2.      Factual Allegations

Plaintiff is an inmate currently held in the Ada County Jail. Plaintiff alleges that he was on parole when, in November 2022, he was arrested for writing "a constitutional letter" to a judge. *Compl.*, Dkt. 3, at 2, 4. He was taken to the Ada County Jail and strip-searched by an unidentified deputy and sergeant. *Id.* at 4. Plaintiff was informed the search was mandatory, but he later learned this was not correct.

Plaintiff apparently reported the search as a violation of the Prison Rape Elimination Act. *Id.* Plaintiff alleges he was "disciplined" for doing so and was not evaluated by medical staff. He also claims he was told not to use the grievance process and suffered retaliation. Plaintiff was never taken to court and was released in February 2023. *Id.* Plaintiff's present detention appears to arise from an unrelated matter.

Plaintiff sues Ada County Sheriff Matthew Clifford and unidentified "Shareholders" and "Subordinate Officers." *Id.* at 1. Plaintiff appears to assert claims under (1) 42 U.S.C. § 1983, the civil rights statute; (2) 42 U.S.C. § 1986, which prohibits conspiracies to violate civil rights; (3) *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); (4) claims under the Prison Rape Elimination Act; and (5) unidentified state law claims. *Id.* at 1–2.

**3.    Discussion**

Plaintiff's Complaint is overly broad and generalized and does not contain facts

sufficient to support a reasonable inference that Defendants are liable for the misconduct

alleged. *See Iqbal*, 556 U.S. at 678. Therefore, Plaintiff has not stated a claim upon which

relief may be granted.

The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any

amended complaint should take into consideration the following.

**A.    *Section 1983 Claims***

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a

plausible civil rights claim, a plaintiff must allege a violation of rights protected by the

Constitution or created by federal statute proximately caused by conduct of a person

acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does

an affirmative act, participates in another's affirmative acts, or omits to perform an act

which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588

F.2d 740, 743 (9th Cir. 1978).

That is, jail officials generally are not liable for damages in their individual

capacities under § 1983 unless they personally participated in the alleged constitutional

violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at

677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or

her own misconduct."). Section 1983 does not allow for recovery against an employer or

principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205-09 (internal quotation marks omitted).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 5

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

i.     First Amendment Claims

Plaintiff claims his First Amendment rights were violated when he was arrested for writing a letter to a judge.

The First Amendment protects, among other things, the right to free speech and to petition the government for redress of grievances. It also includes the right to be free from retaliation for engaging in conduct protected by the First Amendment. "The

protections afforded by the First Amendment, however, are not absolute." *Virginia v. Black,* 538 U.S. 343, 358 (2003).

A person who makes a "true threat," for example, may be arrested and prosecuted because such threats are not protected by the First Amendment. See, e.g., *Watts v. United States,* 394 U.S. 705, 708 (1969). A true threat is "an expression of an intention to inflict evil, injury, or damage on another." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1075 (9th Cir. 2002) (en banc), *as amended* (July 10, 2002) (internal quotation marks omitted).

Plaintiff's claim that he was unconstitutionally arrested in violation of the First Amendment is implausible. Plaintiff has not set forth the content of the letter he wrote to the judge. If the letter contained a true threat, then it was not protected speech. Further, the only identified Defendant is Sheriff Matthew Clifford, and the Complaint does not suggest that Sheriff Clifford was involved in Plaintiff's arrest.

Plaintiff also alleges that, once he was detained in the Ada County Jail, he was disciplined for reporting the strip search and told not to use the grievance process.

The standard governing inmates' First Amendment claims was outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). There, the Court examined a free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions.

The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. The *Turner* Court identified four factors to consider when

determining whether a prison regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89-93.

The *Turner* analysis appropriately allows prison officials substantial leeway in the management of their prisons because "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test so as to "accord great deference to prison officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

The *Turner* analysis applies to pretrial detainees. *See Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010). The United States Court of Appeals for the Ninth Circuit has clarified that, in applying the *Turner* test to pretrial detainees—who may not be punished—the legitimate penological interests in security and safety apply, but "the penological interests in punishment and rehabilitation may not be applicable outside the prison setting." *Id.* at 974 n.10. Therefore, in considering claims of pretrial detainees challenging jail regulations or policies, "courts must defer to the judgment of

[jail] officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 322-23 (2012).

An inmate asserting a retaliation claim must show the following: "(1) ... that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Rather, when analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v.*

*Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also*

*Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves

the proper balance between the need to recognize valid retaliation claims and the danger

of federal courts embroiling themselves in every disciplinary act that occurs in state penal

institutions.") (internal quotation marks and alteration omitted).

    A plaintiff asserting a retaliation claim under § 1983 also "must show a causal

connection between a defendant's retaliatory animus and [the plaintiff's] subsequent

injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory

motivation is not established simply by showing an adverse action by the defendant *after*

protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v.

City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot

rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore

because of this'"). Therefore, although the timing of an official's action can constitute

circumstantial evidence of retaliation—if, for example, an adverse action was taken

shortly after the official learned about an inmate's exercise of protected conduct—there

generally must be something more than mere timing to support an inference of retaliatory

intent. *Pratt*, 65 F.3d at 808.

    Finally, even if an inmate proves that his protected conduct was the but-for cause

of an adverse action by a prison official, the inmate's retaliation claim fails so long as

that action also reasonably advanced a legitimate penological interest. The state

unquestionably has a legitimate interest in maintaining institutional order, safety, and

security in its prisons, *Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of

pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

Here, Plaintiff does not identify the deputies who disciplined Plaintiff for reporting the search or who told Plaintiff not to use the grievance process. Nothing in the Complaint suggests that Sheriff Clifford was personally involved in these acts or that he knew of and failed to prevent them. Additionally, Plaintiff asserts only bare assertions of retaliatory intent. Therefore, Plaintiff's First Amendment claims are implausible.

   ii. <u>False Arrest and Imprisonment Claims</u>

Plaintiff challenges his arrest not only on First Amendment grounds. He also asserts that the arrest, which was undertaken allegedly as retaliation for writing his "constitutional letter" to a judge, was not supported by probable cause. *Compl*. at 2.

False arrest claims are analyzed under the Fourth Amendment. That amendment prohibits unreasonable searches and seizures and "requires that arrest warrants 'be based upon probable cause, supported by Oath or affirmation.'" *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 (1975)). Generally speaking, "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981).

Probable cause exists where the "facts and circumstances [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Where an arrest is made pursuant to a warrant, the arrest violates the Fourth Amendment if "a reasonably well-

trained officer in [defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986).

When a detention occurs as the result of a false arrest, a false imprisonment claim arises under the Fourteenth Amendment protection against deprivations of liberty without due process. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979). Under § 1983, a plaintiff must meet the elements of common law false imprisonment[1] and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). The plaintiff also needs to show that the persons detaining him were involved in or aware of the wrongful nature of the arrest. *Id.* at 1526–27.

Plaintiff's false arrest and false imprisonment claims are implausible for two reasons. First, the Complaint does not plausibly allege the absence of probable cause. Plaintiff's bare assertion of retaliation does not support a reasonable inference that retaliation—and not probable cause—was the reason behind Plaintiff's arrest. Second, as stated previously, the only identified Defendant is Sheriff Matthew Clifford. Plaintiff does not allege that Clifford was involved in his arrest or knew of the allegedly wrongful nature of the arrest.

---

[1] The elements of common law false imprisonment in Idaho are (1) restraint of the physical liberty of another (2) without legal justification. *Clark v. Alloway*, 170 P.2d 425, 428 (Idaho 1946).

iii.        Strip-Search Claims

Plaintiff alleges he was strip-searched in Ada County Jail. Claims of

unconstitutional bodily searches are analyzed under the Fourth Amendment.

A court must consider several factors in determining whether a strip-search of a

pretrial detainee was unreasonable under the Fourth Amendment: "(1) the scope of the

particular intrusion, (2) the manner in which it is conducted, (3) the justification for

initiating it, and (4) the place in which it is conducted. *Byrd v. Maricopa Cty. Sheriff's

Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011) (internal quotation marks omitted). Whether a

search of an arrestee or pretrial detainee is unreasonable must be evaluated "in the light

of the central objective of prison administration, safeguarding institutional security." *Bell

v. Wolfish*, 441 U.S. 521, 547 (1979). Even if a court "disagree[s] with the judgment of

[governmental] officials about the extent of the security interests affected and the means

required to further those interests," it "may not engage in an impermissible substitution of

[its] view on the proper administration of a corrections facility for that of the experienced

administrators of that facility." *Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 976

(9th Cir. 2010) (internal quotation marks omitted).

In *Bell v. Wolfish*, the United States Supreme Court upheld as constitutional a

policy of mandatory, routine strip-searches—which included visual cavity searches—

performed on detainees "after every contact visit with a person from outside the

institution," even though the searches were not supported by individualized suspicion.

441 U.S. at 558. The Court emphasized that the constitutionality of strip-searches

depends on whether such searches "are rationally related to a legitimate nonpunitive

governmental purpose and whether they appear excessive in relation to that purpose." *Id*. at 561.

The Supreme Court has also upheld invasive strip-searches of an arrestee or transferring inmate before the arrestee was placed in the inmate population, given that the "admission of inmates creates numerous risks for facility staff, for the existing detainee population, and for a new detainee himself or herself." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 330 (2012). The jail officials in *Florence* required the detainee to shower with a delousing agent and checked the detainee for scars, marks, gang tattoos, and contraband as he stripped. The detainee also had to "open his mouth, lift his tongue, hold out his arms, turn around, and lift his genitals." *Id*. at 323. An officer at another facility looked at the detainee's "ears, nose, mouth, hair, scalp, fingers, hands, armpits, and other body openings," and the detainee was required to lift his genitals, turn around, and cough while squatting. *Id*. at 324. These searches, though undoubtedly invasive, were justified by legitimate security concerns and, therefore, constitutional.

Plaintiff offers no facts about the circumstances surrounding the strip-search. Thus, a factfinder could not plausibly infer that the search was not rationally related to a legitimate nonpunitive purpose or that it was excessive in relation to that purpose. *See Bell*, 441 U.S. at 561. Therefore, the Complaint fails to state a claim upon which relief may be granted based on the search.

iv.     Medical Treatment Claims

Plaintiff asserts he was not evaluated by medical personnel after he was strip-searched. *Compl.* at 4. The Fourteenth Amendment's Due Process Clause applies to pretrial detainees and is violated when the conditions to which the detainee is subjected amount to punishment. *Bell*, 441 U.S. at 535.

Medical-treatment claims of pretrial detainees are analyzed using a standard of "objective deliberate indifference." *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotation marks and alteration omitted).

Although courts use an objective standard in evaluating medical-treatment claims of pretrial detainees, this standard must not be confused with the objective standard used for evaluating negligence claims. This is because negligence—the "mere lack of due care" by a governmental official—"does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cty. of Los Angeles*, 833 F.3d

1060, 1071 (9th Cir. 2016) (en banc), *cert. denied sub nom. Los Angeles Cty. v. Castro*, 137 S. Ct. 831 (2017); *see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (stating that negligence and ordinary negligence are not actionable under § 1983, because such actions are not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person"). Therefore, a pretrial detainee complaining of inadequate medical treatment must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

The Complaint contains no facts about the injuries or medical condition for which Plaintiff alleges he should have been evaluated. Nor has Plaintiff identified any particular jail official or medical provider who was involved in the decision not to examine him. Thus, Plaintiff's medical treatment claims are implausible.

### B.  *Claims under 42 U.S.C. § 1986*

Section 1986 provides that persons who negligently fail to prevent a wrongful conspiracy to violate civil rights may be liable to the party injured. A prerequisite to stating a § 1986 claim is plausibly alleging a racial or class-based discriminatory animus behind the conspirators' actions. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (discussing § 1985 claims); *McCalden v. California Library Association*, 955 F.2d 1214, 1223 (9th Cir. 1990) ("[A] claim can be stated under § 1986 only if the complaint contains a valid claim under § 1985.") (internal quotation marks omitted), *superseded by rule on other grounds as stated in Harmston v. City & Cnty. of San Francisco*, 627 F.3d 1273 (9th Cir. 2010). Moreover, to state a plausible claim under § 1986, a plaintiff must offer more than a mere "bare allegation of conspiracy," and "a conclusory allegation of

agreement at some unidentified point does not supply facts adequate to show illegality."
*Bell Atl. Corp.*, 550 U.S. at 556-57 (discussing pleading standards in context of a
conspiracy claim under the Sherman Act).

Not only does the Complaint fail to plausibly allege a racial or class-based animus,
but it also contains no facts supporting a claim of conspiracy. Consequently, Plaintiff's
§ 1986 claims are implausible.

### C.    Bivens *Claims*

In *Bivens*, the United States Supreme Court recognized a cause of action for
monetary damages against federal officials in their individual capacities for a violation of
constitutional rights. 403 U.S. at 392–97. A *Bivens* action is the federal analog to an
action brought under § 1983, and a plaintiff asserting a *Bivens* claim must show that the
defendant was acting under color of federal law. *Cox v. Hellerstein*, 685 F.2d 1098, 1099
(9th Cir. 1982).

Plaintiff's *Bivens* claims are implausible because he does not name a federal
official as a Defendant or otherwise allege that Defendants, who are county employees,
acted under color of federal law.

### D.    *Claims under the Prison Rape Elimination Act*

The Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30302 *et seq.*, "was
enacted to address the problem of rape in prison by creating and applying national
standards to prevent, detect, and respond to prison rape, and by ensuring compliance of
state and federal prisons by conditioning eligibility for federal grant money on
compliance with the standards." *Barber v. Cox*, No. 1:17-CV-00318-BLW, 2019 WL

454090, at *1 n.1 (D. Idaho Feb. 5, 2019) (unpublished). But PREA does not provide a private right of action enforceable by individual prisoners. *Id.*; *see also Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir.) (unpublished) (collecting cases), *cert. denied*, 136 S. Ct. 238 (2015); *see also, e.g., Hill v. Hickman Cty. Jail*, 2015 WL 5009301 (M.D. Tenn. August 21, 2015) (unpublished) (dismissing PREA claim for lack of private right of action); *Montgomery v. Harper*, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) (unpublished) ("[T]his Court concludes that the PREA creates no private right of action."); *Holloway v. Dep't of Corr.*, 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to create a private right of action for inmates to sue prison officials for non-compliance to the Act.").

Because PREA does not create a private cause of action, Plaintiff's PREA claims are implausible and should be omitted from any amended complaint.

### E.    State Law Claims

In addition to federal claims, Plaintiff purports to assert state law claims. However, Plaintiff does not specifically identify any such claims. *See Compl.* at 1. Moreover, because the Complaint fails to state a federal claim upon which relief may be granted, the Court would decline to exercise supplemental jurisdiction over state law claims in any event. If Plaintiff files an amended complaint, and if the amended complaint identifies and states a plausible state law claim, the Court will reconsider the issue of supplemental jurisdiction.

4.      **Standards for Amended Complaint**

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the

actions complained of have resulted in a deprivation of his constitutional rights. *See Ellis*

*v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v.*

*Ehrler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection

between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045;

*Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations

of official participation in civil rights violations are not sufficient to withstand a motion

to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of*

*Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at

678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancement.") (internal quotation marks and alteration omitted).

Rather, for each cause of action against each defendant, Plaintiff must state the

following: (1) the name of the person or entity that caused the alleged deprivation of

Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as

state employment or a state contract) or a private entity performing a state function;

(3) the dates on which the conduct of the defendant allegedly took place; (4) the specific

conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional or

statutory provision Plaintiff alleges has been violated; (6) facts alleging the elements of

the violation are met—for example, Plaintiff must allege facts satisfying the elements of a

retaliation or false arrest claim; (7) the injury or damages Plaintiff personally suffered;

and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate, numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as an "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant

knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.     The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[2]

2.     If Plaintiff does not file a timely amended complaint, this case may be dismissed with prejudice and without further notice for failure to state a claim upon which relief may be granted, failure to prosecute, or failure to comply with a Court order. *See* 28 U.S.C. §§ 1915 and 1915A; Fed. R. Civ. P. 41(b).

3.     Plaintiff's request for a transfer order (Dkt. 5) is DENIED.

4.     Because an amended complaint is required for Plaintiff to proceed, Plaintiff's Motion for Appointment of Counsel (Dkt. 6) is DENIED without

---

[2] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).

prejudice. Plaintiff may renew the request for counsel in an amended complaint.

DATED: December 2, 2024

B. Lynn Winmill
U.S. District Court Judge